UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALLSTATE CASUALTY INSURANCE CO.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TIMOTHY GRIFFIN and MELISSA MORELAND,<br><br>　　　　Defendants. | Case No.: C 05- 0292 PVT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

This case involves an attack by Defendant Timothy Griffin ("Griffin") on Defendant Melissa Moreland ("Moreland"). At the time of the attack, Griffin was living with his parents and was covered as an insured under their Allstate Deluxe Plus Homeowners Policy ("Homeowners Policy") and a Personal Umbrella Policy ("PUP Policy") (Jointly, the "Policies"), both issued by Plaintiff Allstate Casualty Insurance Company ("Allstate"). (Joint Stipulated Facts 1-2.) Griffin stabbed Moreland multiple times and was charged with a violation of California Penal Code § 245(a), assault with a deadly weapon and assault by means likely to cause great bodily injury. (Joint Stipulated Facts 3, 6) At his criminal trial, Griffin was found not guilty by reason of insanity pursuant to California Penal Code § 25. (Joint Stipulated Fact 7.)

Moreland then filed a civil complaint in Santa Clara County Superior Court (the "Moreland Action"). (Joint Stipulated Fact 8.) Allstate defended Griffin in the Moreland Action under a reservation of rights and the parties have settled the Moreland action. Allstate filed the present declaratory relief action to determine whether the policies cover Griffin's actions. (Joint Stipulated Facts 9-10.) The parties have agreed to a stipulated set of facts and to resolve the sole issue of whether the insurance policies cover the assault by cross motions for summary judgment.

Allstate claims that the assault did not constitute a covered "occurrence" as defined under the policy, and that the assault is precluded from coverage by the Allstate "Intentional/Criminal Act" exclusion as well as the statutory mandate of California Insurance Code section 533. Moreland claims that Griffin was insane at the time of the attack, negating any intent or willfulness, thereby rendering the attack a non-excluded occurrence. For the foregoing reasons, each of these issues turns on factual questions that are not resolved in the stipulated set of facts, rendering it impossible for the court to grant summary judgment to either side at this time.

## II.   LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the

jury could reasonably find for the [non- moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Fed. R. Civ. P. 56(c). A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.* at 255. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Id.*; *see also Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

## III. DISCUSSION

### A. "Occurrence"

The Homeowners Policy provides coverage for "bodily injury or property damage arising from an occurrence." (Joint Stipulated Fact 11.) The PUP Policy provides for coverage of "bodily injury, personal injury or property damage" if such injury or damage "arise from a covered occurrence." (Joint Stipulated Fact 13.) In order for coverage to exist, Griffin's attack must be an occurrence within the meaning of the Policies. Both Policies define "occurrence" as follows: "'Occurrence' means an *accident*, including continuous or repeated exposure to substantially the same, general harmful conditions during the policy period, resulting in bodily injury or property damage." (Joint Stipulated Facts 12, 15) (emphasis added). Allstate argues that Griffin's attack did not constitute a covered "occurrence" under the Policies because Griffin's conduct was not accidental.

The first step in analyzing a claim for coverage under an insurance policy is to determine whether the claim falls within the policy terms. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995). "While the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986)

(citation omitted).  Thus, Moreland must show that Griffin's attack falls within the basic coverage of the Policies.

In its plain meaning, "accidental" means "arising from extrinsic causes, occurring unexpectedly or by chance or happening without intent or through carelessness." *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal. App. 3d 1199, 1202 (1984); *see Webster's Ninth New Collegiate Dict.* 49 (1983).  "An intentional act is not an 'accident' within the plain meaning of the word." *Royal Globe*, 181 Cal. App. 3d at 537 (footnote omitted).  The term "accidental" refers to the insured's conduct, not his state of mind. *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 804 (1994).  Every **sane** individual who commits a deliberate act is presumed to have intended the natural and probable consequences of that act. *People v. Skinner*, 39 Cal. 3d 765, 772-773 (1985) (emphasis added.)

There is no dispute that the attack, if committed by a sane person, would not constitute an occurrence. *See Jacobs v. Fire Ins. Exchange*, 36 Cal. App.4th 1258, 1269 (1995) (noting there would be no issue as to willfulness under §533 if shooter were sane).  Moreland argues that Griffin's status as legally insane means that he was incapable of an intentional act.  Moreland asserts this proposition is proven in *Kerns v. CSE Ins. Group*, 106 Cal. App.4th 368, 395 (2003): "Whether the admitted stabbing was 'willful' or 'intentional for purposes of section 533 and the Policy exclusion for intentional acts, however, depends on the resolution of the disputed factual issue of D.'s legal sanity."  However, this language does not mean that any finding of insanity would lead to a finding of no intent.  Under California law, "legal insanity *may* negate a willful act," but does not automatically do so. *Jacobs*, Cal. App.4th at 1269 (referring to willfulness under § 533.) (emphasis added).  The Court has found no case which sets forth a standard for when insanity does and does not negate willfulness or intent.  Logically, whether an act committed by an insane person is intentional depends on whether the person was capable of forming the intent to act, a finding not inherent in all findings of insanity.

Pursuant to California's two-prong insanity test, a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of his or her act *or* 2) incapable of knowing or understanding that his or her act is wrong. *People v. Horn*, 158 Cal.

App. 3d 1014, 1027 (1984).  There is no evidence in the record indicating under which prong Griffin was found insane.  If Griffin was deemed legally insane because he was unable to understand that his act was wrong, he could have understood the nature and consequences of his act.  If Griffin understood what he was doing, his conduct would not have been accidental and would fall outside the definition of "occurrence" in the Policies.  Thus, Moreland has not given sufficient evidence to satisfy her burden of proof that the attack was an "occurrence" covered under the Policies.

Allstate asserts that it is entitled to summary judgment on the basis that the undisputed facts show that the attack was not an occurrence.  Allstate also argues that the term "accidental" refers to the insured's conduct, not his state of mind.  *Collin v. Amer. Empire Ins. Co.*, 21 Cal. App. 4th 787, 804 (1994).  Allstate then argues that, because an attack is deliberate conduct that can never be an accident, Griffin's mental state is irrelevant.  However, mental state is irrelevant for *sane* people who are presumed to intend the natural consequences of their actions.  Griffin's status as legally insane, however, means that he *might* not have intended the natural consequences and might not have been capable of purposeful deliberate conduct.  In order to show that Moreland will be unable to meet her burden to show that the attack was an occurrence, Allstate must show that Griffin intended to attack Moreland, but was found insane because he could not tell that his acts are wrong.  As there is no such evidence in the record, Allstate is not entitled to summary judgment on this basis.

In short, Allstate has not shown that insanity *cannot* negate intent and Moreland has not shown that Griffin's insanity *did* negate intent.  Accordingly, neither side is entitled to summary judgment on the basis that the assault was or was not an "occurrence" under the Policies.

**B.    California Insurance Code section 533**

California Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."  Cal. Ins. Code § 533.  The words "willful" as used in the statute and "intentional" as used in the insurance policy are synonymous. *Congregation of Rodef Sholom v. American Motorists Ins. Co.*, 91 Cal. App. 3d 690, 696 n.2 (1979).  "The public

policy underlying section 533 is to discourage willful torts." *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1021 (1991). Section 533 is deemed included in every contract of insurance; it is an implied exclusionary clause in the policy. *J.C. Penney Cas. Ins. Co.*, 52 Cal. 3d at 1019. Thus, as with any exclusion, the burden is on Allstate to bring itself within the exclusion of liability under California Insurance Code 533. *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 879-880.

Allstate argues that Griffin's attack was willful and precluded under section 533. For one to commit an intentional act under section 533, he or she must have an intent to act and an intent to harm. *Clemmer*, 22 Cal. 3d at 887. Additionally, where there is a question of sanity and whether an insured lacked the intent to act, section 533 still bars coverage where the insured had a preconceived design to inflict injury. *J.C. Penney Casualty Ins. Co.,* 52 Cal. 3d at 1023.

Allstate argues that it does not have to prove that Griffin had an intent to commit the act and the specific intent to cause injuries because an attack is inherently harmful. *Fire Ins. Exch. v. Altieri*, 235 Cal. App. 3d 1352 (1991). However, *Altieri* is inapposite because there was no issue of insanity in that case. Because insanity may negate the intent the act, Allstate must show either that Griffin intended to attack Moreland (the insanity finding related only to an inability to know it was wrong) or that Griffin had a preconceived design to injure. Allstate presents no evidence showing either Griffin's intent to act or preconceived design to inflict injury.

Therefore, Allstate has not carried its burden of proof that Griffin's attack falls within the exclusion of liability under section 533. Accordingly, Allstate is not entitled to summary judgment on the basis of section 533. Similarly, Moreland is not entitled to partial summary judgment that the section 533 exclusion does not apply because she has not shown undisputed facts that prove that Griffin lacked the intent to attack her.

### C.     The "Intentional/Criminal Act" Exclusion

Allstate's Policies state: "We do not cover any bodily injury or property damage intended by, or which may be reasonably be expected to result from the *intentional or criminal acts* or omissions of any insured person. This exclusion applies even if (a) such an insured person lacks the mental capacity to govern his or her conduct . . . . This exclusion applies

regardless of whether or not such insured person is actually charged with or convicted of a crime." (Joint Stipulated Facts 11, 14) (emphasis added).  Allstate argues that coverage is precluded by the Intentional/Criminal Act exclusion of the Policies.

          1.        Policy Interpretation Standards

When determining whether a particular insurance policy provides for coverage, the interpretation of the policy is a question of law.  *AIU Ins. Co v. Superior Court*, 51 Cal.3d  807, 818 (1990).  In *Waller v. Truck Ins. Exch., Inc.*, the California Supreme Court set forth principles for interpreting insurance contracts.  11 Cal. 4th 1, 18 (1995).  "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it . . . . The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties . . . ." *Id.*  The "clear and explicit" meaning of the insurance policies must be interpreted in their "ordinary and popular sense," unless they are "used by the parties in a technical sense or a special meaning is given to them by usage." *Id.*

Moreland argues that the Intentional/Criminal exclusion is ambiguous, and should be strictly construed against Allstate.  Language in a contract must be interpreted as a whole, and in the circumstances of the case.  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992).  Additionally, Courts will not strain to create an ambiguity where none exists.  *Reserve Insurance v. Pisicotta*, 30 Cal. 3d 800, 807 (1982).

Moreland argues that any ambiguity must be interpreted against Allstate as the drafter and that subsection (a) of the exclusion is ambiguous and should be interpreted to apply only to the "irresistible impulse" defense of mental incapacity.  Moreland further argues that because Griffin was not found to be under an irresistible impulse, the exclusion does not apply.

Moreland argues that the Allstate Policies use language identical to that used by the California Supreme Court in a case in which it found coverage because the insured "lacked the mental capacity to intend to shoot and harm [the victim] and lacked such capacity to govern his own conduct." *Clemmer*, 22 Cal. 3d at 873.  At the time, California recognized the "irresistible impulse" or the lack of capacity to conform conduct to the requirements of law as a basis for a

finding of insanity. In 1982, after *Clemmer* was decided, California abolished the "irresistible impulse" as a defense to a crime. *See* Cal. Penal Code § 25.

Moreland claims that the Allstate Policies are ambiguous because the language chosen is identical to that used in the *Clemmer* case. Although the language in the Policies is the same as used in *Clemmer*, insurance contracts must be interpreted in their "ordinary and popular sense." A layperson would not interpret subsection (a) to cover only the insured's ability to control his or her conduct and not encompass other types of mental incapacity. Accordingly, Moreland's argument that the exclusion does not apply because Griffin was not under an irresistible impulse is not persuasive.

### 2. Criminal Act

Moreland argues that Griffin was unable to commit a criminal act because he was found not guilty by reason of insanity. "California law exempts from criminal responsibility . . . the insane." *People v. Phillips* 83 Cal. App. 4th 170, 173 (2000). California courts treat a judgment after a finding of insanity as an acquittal. *People v. Drew*, 22 Cal.3d 333, 344 (1978). A legally insane person cannot intend his or her act, and thus cannot commit a crime. *Estate of Ladd*, 91 Cal. App. 3d 219, 226-27 (1979) (finding of insanity was a conclusive determination that the defendant did not "unlawfully and intentionally" cause the death of the decedent under California Probate Code section 258.); *see also Ebberts v. State Bd. of Control of Cal.*, 84 Cal. App. 3d 329, 334 (1978) (a crime is not committed when plaintiff was found not guilty by reason of insanity.) (*citing People v. Wells*, 33 Cal. 2d 330, 348 (1949)); *People v. French*, 12 Cal. 2d 720, 729 (1939) *(overruled on other grounds by People v. Valentine*, 28 Cal. 2d 121 (1946)). Thus, the finding of legal insanity negates any crime having been committed. Accordingly, the criminal prong of the exclusion does not apply to Griffin.

### 3. Intentional Act

Insurers can provide more restrictive liability coverage than is required under California Insurance Code section 533. *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 749 (1993). Insurers have the right to limit policy coverage in plain and understandable language and can limit the character and extent of the risk assumed." *Id.* Allstate argues that by including

the Intentional/Criminal Act exclusion within the Policies, it bars coverage for a greater range of acts than section 533.  *See 20th Century Ins. Co. v. Stewart*, 63 Cal. App. 4th 1333, 1340 (1998).

Allstate argues that it is entitled to summary judgment because the attack must be excluded as an intentional act.  Allstate relies on *Nakauchi v. Allstate*, 2002 WL 32069127 at *5 (May 21, 2002) in which the court held that the exclusion "explicitly makes [the attacker's] mental state irrelevant."  In that case, however, the attacker was convicted of the assault, as opposed to found not guilty by reason of insanity.  Thus, the finding that mental state is irrelevant is itself irrelevant in the context of the facts of this case.  As described above, Griffin's legal status as insane creates the possibility that his attack was not intentional.

Allstate also argues that the Intentional Act exclusion applies to insane persons because insane persons are held liable for their intentional torts.  "Insane persons are commonly held liable for their intentional torts.  *Bashi v. Wodarz*, 45 Cal. App. 4th 1314, 1322 (1996); *see* Cal. Civil Code § 41 ("A person of unsound mind, of whatever degree, is civilly liable for a wrong done by the person, but is not liable in exemplary damages unless at the time of the act the person was capable of knowing that the act was wrongful").  Allstate claims that insanity may negate negligence liability, because the harm was not foreseeable to the insane person, but it does not negate liability for intentional torts because the only intent necessary is the intent to commit the act. *Ellis v. D'Angelo*, 116 Cal.App.2d 310, 315-17 (1953).  Allstate argues that because Griffin *could* have the requisite intent for liability for an intentional tort, he must have the requisite intent for the intentional acts exclusion.  However, whether an attacker does have the requisite intent to attack is a question of fact.  *Mullen v. Bruce*, 168 Cal.App.2d 494, 497 (1959).  As discussed above, whether Griffin had the intent to commit the assault is a disputed question of fact.  Thus, Allstate is not entitled to summary judgment based on the intentional acts exclusion.

Moreland argues that her cause in negligence would fall outside the intentional acts exclusion.  However, the mere naming of a cause of action does not determine the nature of liability.  Where the intentional acts of an insured are alleged, negligence claims arising out of the intentional acts of the insured are also barred.  *Century Transit Sys., Inc. v. American Empire Surplus Lines Ins*. Co., 42 Cal. App.4th 121, 127 (1996) (Negligent hiring and supervision claims

arising out of assault barred by intentional acts exclusion.); *Farmer v. Allstate Ins. Co.*, 311 F. Supp.2d 884, 895 (C.D. Cal. 2004) (Negligent supervision claim based on failure to prevent sexual harassment barred by intentional acts exclusion.). Additionally, Moreland's negligence cause of action is predicated on the same facts as her intentional causes of action, but based in negligence due to Griffin's insanity. Thus, the negligence cause will only fall outside the intentional acts exclusion if Griffin did not intend the acts, a disputed question of fact.

Accordingly, as neither Allstate nor Moreland has given any evidence relating to Griffin's ability to intend to act, neither party is entitled to summary judgment on the basis of the Intentional Act exclusion.

## IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Summary Judgment is Granted in Part in that the Criminal Acts Exclusion does not apply to Griffin because he was found not guilty by reason of insanity;

2. Defendant's Motion for Summary Judgment is Denied in Part in all other respects; and

3. Plaintiff's Motion for Summary Judgment is Denied.

IT IS SO ORDERED.


Dated: *August 31, 2005*

                                                 */s/ Patricia V. Trumbull*
                                                 PATRICIA V. TRUMBULL
                                                 United States Magistrate Judge