UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIMOTHY GRIFFIN and MELISSA ) <br> MORELAND, ) <br> ) <br> Defendants. ) <br> ) | Case No.: C 05- 0292 PVT <br><br> **AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**I.   INTRODUCTION**

This case involves an attack by Timothy Griffin ("Griffin") on Defendant Melissa Moreland ("Moreland").[1] At the time of the attack, Griffin was living with his parents and was covered as an insured under their Allstate Deluxe Plus Homeowners Policy ("Homeowners Policy") and a Personal Umbrella Policy ("PUP Policy") (jointly, the "Policies"), both issued by Plaintiff Allstate Casualty Insurance Company ("Allstate"). (Joint Stipulated Facts ("JSF") 1-2.) On or about March 18, 2003, Griffin attacked Moreland at a Denny's restaurant in San Jose. (JSF 3). Prior to the Moreland Attack, Moreland was sitting inside the restaurant with two

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

friends when a man ran into the restaurant. (*Id.*) Approximately five minutes later, one of Moreland's friends left the table and was attacked inside the restaurant by Griffin, who picked her up and threw her into the dining counter. (*Id.*) As Moreland arose and approached her friend, Griffin picked up a steak knife and stabbed Moreland multiple times. (*Id*.) Griffin was charged with a violation of California Penal Code § 245(a), assault with a deadly weapon and assault by means likely to cause great bodily injury. (JSF 4.)

During the initial, guilt phase of Griffin's criminal trial, Griffin was found guilty of one count of violation of California Penal Code § 245(a). (JSF 5.) During the subsequent, sanity phase of the same trial, Griffin was found to have been insane at the time of the Moreland Attack pursuant to California Penal Code § 25(b). (JSF 5.) As a result, Griffin was conserved under California Welfare & Institutions Code Section 5000 as a gravely disabled person due to mental illness. Moreland then filed a civil complaint in Santa Clara County Superior Court (the "Moreland Action"). (JSF 6.) Allstate defended Griffin in the Moreland Action under a reservation of rights and the parties have settled the Moreland action. (JSF 7-8.) Allstate filed the present declaratory relief action to determine whether the policies cover Griffin's actions. The parties have agreed to a stipulated set of facts and to resolve the sole issue of whether the insurance policies cover the assault by cross motions for summary judgment.

The first set of cross motions for summary judgment were heard on July 26, 2005. Allstate claimed that the assault did not constitute an "occurrence" as defined under the policy, that the assault is precluded from coverage by the Allstate "Intentional/Criminal Act" exclusion, and that the statutory mandate of California Insurance Code section 533 also precludes coverage. Moreland claimed that Griffin was insane at the time of the attack, negating any intent or willfulness and rendering the attack a non-excluded occurrence. The court denied Allstate's Motion in its entirety and denied Moreland's motion in part and granted the motion in part, finding that the criminal acts exclusion did not apply. The first order held that most of the issues turned on factual questions that were not resolved in the stipulated set of facts. The court found that the criminal finding that Griffin was insane did not resolve the issues because insanity "may" negate willfulness under California law, but does not necessarily do so. The court noted

under California's two-prong insanity test, a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of his or her act or 2) incapable of knowing or understanding that his or her act is wrong. *People v. Horn*, 158 Cal.App. 3d 1014, 1027 (1984). Thus, the finding of insanity did not prove that Griffin did not intend his actions towards Moreland. Based on an expanded record, including details of the basis for finding Griffin insane, the parties again move for summary judgment.

Allstate again claims that the assault did not constitute an "occurrence" as defined under the policy and that the assault is precluded from coverage by both the Allstate "Intentional/Criminal Act" exclusion and the statutory mandate of California Insurance Code section 533. Moreland claims that, at the time of the attack, Griffin neither understood the nature and quality of his actions nor that they were wrong and, therefore, did not intend his actions.

Based on the expanded record, the court finds that Griffin acted intentionally in that he understood that he was wielding a knife, that he was striking a person in the head with the knife, and that striking a person with a knife was likely to cause that person harm. Accordingly, the attack was not an occurrence under the policies; Allstate's motion for summary judgment is granted and Moreland's motion for summary judgment is denied.

## II.    LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)). A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, a court must view

the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.* at 255.

**III.  DISCUSSION**

    **A.  Griffin's Mental State at the Time of the Attack**

On November 13, 2003, Dr. Kline wrote a Psychological Evaluation for Judge Kevin Murphy, presiding judge at Griffin's criminal proceedings, regarding Griffin's mental state at the time of the incident with Moreland. ("Kline Report", JSF Exh. C.) Dr. Kline observed that Griffin displayed persecutory delusions and delusions of control. (Kline Report, p. 6.) On the day of the attack, Griffin believed that the initial victim that he chased was "Lucifer" and that he was commanded by God to attack Lucifer or face punishment. (Kline Report, p.11.) However, during the Moreland Attack, Griffin knew he was attacking a person with a knife and that such an attack would cause injury. (Kline Rep. at 11; "Kline Supp. Rep." JSF, Ex. E at 2-3; and "Kline Depo." Knutson Decl. Exh. A. at 48:14-49:24, 50:19-51:7, 55:10-16.) Nonetheless, Dr. Kline concluded that "in this state of mind, it is highly unlikely that [Griffin] had the capacity to reflect on the consequences to the victim, as he was compelled by psychotic symptoms he experienced as a religious emergency to secure his own survival." (Kline Supp. Report, JSF Exh. E., p.2)

Similarly, Dr. Harper, another expert appointed by the criminal court, opined that Griffin, in a severe delusional state, believed that the initial victim he attacked was actually Lucifer and that Lucifer and God were commanding Griffin to act. (Harper Report, JSF, Exh. F.) Dr. Harper also testified that Griffin was aware that he picked up a knife, that he stabbed someone with the knife, and that stabbing someone with a knife could produce bodily injury. (Harper Depo. Tr. at 46:14-15, Knutson Decl. Exh. B.) Dr. Harper opines that Griffin knew what he was doing, but could not control his behavior. (Harper Depo. Tr. at 47-48, Knutson Decl. Exh. B.). Based on this lack of control, Harper also testified at his deposition that Griffin never intended to stab anyone. (Harper Depo. Tr. at 69, Fleishman Dec., Exhibit K). Dr. Harper explained that although Griffin knew objectively that stabbing or choking someone could produce bodily harm, in that moment at Denny's, Griffin did not understand the aggressive nature of his actions; he

was "operating without thought." (Harper Depo. Tr. at 69, Fleishman Dec., Exhibit K.) Harper concludes that, because he thought he was being attacked, Griffin thought his actions were defensive. Thus, Harper concludes Griffin did not understand the "nature" of his actions. (Harper Depo. Tr. at 47-48, Knutson Decl. Exh. B.)

**B.     "Occurrence"**

1. The Policies and the Law Governing Interpretation

The first step in analyzing a claim for coverage under an insurance policy is to determine whether the claim falls within the policy terms. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995). "[T]he burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App.3d 532, 536 (1986). Thus, Moreland has the burden of proof to show that the Griffin's attack falls within the basic coverage of the Policies.

The Homeowners Policy provides coverage for "bodily injury or property damage arising from an occurrence." (JSF 9.) The PUP Policy provides for coverage of "bodily injury, personal injury or property damage" if such injury or damage "arise from a covered occurrence." (JSF 11.) In order for coverage to exist, Griffin's attack must be an occurrence within the meaning of the Policies. Both Policies define "occurrence" as follows: "Occurrence means an accident, including continuous or repeated exposure to substantially the same, general harmful conditions during the policy period, resulting in bodily injury or property damage." (JSF 10, 13.)

In its plain meaning, "accidental" means "arising from extrinsic causes, occurring unexpectedly or by chance or happening without intent or through carelessness." *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal. App. 3d 1199, 1202 (1984), *citing* Webster's Ninth New Collegiate Dict. (1983) p. 49. "An intentional act is not an 'accident' within the plain meaning of the word." *Royal Globe*, 181 Cal. App. 3d at 537 (footnote omitted). "An accident can flow from an intentional act only if 'some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.'" *Quan v. Truck Ins. Exchange* 67 Cal.App.4th 583, 600 (1998) (citation omitted).

Additionally, the term "accidental" refers to the insured's conduct, not his state of mind.

*Collin v. Amer. Empire Ins. Co.*, 21 Cal. App. 4th 787, 804 (1994); *see also Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 50 (1989) (Where the insured intended all the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause the injury.")

There is no dispute that the attack, if committed by a sane person, would not constitute an occurrence. *See Jacobs v. Fire Ins. Exchange*, 36 Cal. App.4th 1258, 1269 (1995) (noting there would be no issue as to willfulness under §533 if shooter were sane). Under California law, "legal insanity *may* negate a willful act," but does not automatically do so. *Jacobs*, Cal. App.4th at 1269 (referring to willfulness under § 533.). Even after additional briefing by the parties and additional independent research, the Court has found no case which sets forth a standard under California law for when insanity does and does not negate willfulness or intent.

### 2. Interaction between Insanity and Occurrence

As noted above, pursuant to California's two-prong insanity test, a person is deemed legally insane if he or she is 1) incapable of knowing or understanding the nature and quality of the act *or* 2) incapable of knowing or understanding that one's act is wrong. *People v. Horn*, 158 Cal. App. 3d 1014, 1027 (1984). Moreland argues that Griffin did not know the nature and quality of his actions and, therefore, did not act intentionally. Allstate argues that Griffin understood the nature and quality of his actions because it is undisputed that he knew that he was striking a person with a knife and that such a strike was likely to cause harm.

This case is complicated by the fact both experts appointed by the court during Griffin's criminal trial find that Griffin knew he was attacking a human being with a steak knife and that it was likely to cause injury and also find that Griffin did not understand the "nature and quality" of his actions. In order to understand this apparent contradiction, it is necessary to delve more deeply into the experts' understanding of nature and quality.

Dr. Kline explained that nature is the understanding of the physical characteristics and actions, whereas "quality is about they understand the immediate consequences and the general meaning of their action." (Kline Depo. Tr., Fleishman Decl. Exh. E.) Kline's supplemental report reveals that he based his definition of "quality" on a book entitled "Conducting Insanity

Evaluations" written by psychologist Richard Rogers and attorney Daniel Shuman. (Fleishman Decl. Exh. P. at 2) This book defines "quality" as contemplating "an acknowledgment of the harmfulness of the conduct (Davidson, 1965) and its potential or actual consequences for the victim." The book goes on to give an example that a woman trying to baptize the devil out of her baby might drown her baby without an awareness of the potential harmfulness of her actions. Kline asserts that Griffin is akin to the woman "baptizing" her baby. However, Griffin understood that the knife would hurt real people, whereas the woman in the example did not understand that she might drown her baby; she was unaware of the potential harmfulness. Thus, even under the definition cited by Dr. Kline, the court disagrees with Dr. Kline's conclusion that Griffin did not understand the "quality" of his actions.

Dr. Harper candidly admitted that "I have always – have difficulty really understanding what quality means." (Harper Depo. Tr. at 19:8-13, Fleishman Decl. Exh. I.) Dr. Harper testified that Griffin did understand the nature of his actions. (Harper Depo. Tr. at 45-46, 54-55 Knutson Decl. Exh B.) However, Dr. Harper also asserted that Griffin did not understand the "aggressive nature" of his actions, and from that concludes that Griffin did not understand the "quality" of his actions. (*Id*. at 48.) Dr. Harper testified that a person who does not understand the quality of his actions when the action and the larger result they are expecting are inconsistent. (*Id.* at 44.) Thus, Dr. Harper found that Griffin did not understand the quality of his actions because he thought he had to defend himself against Lucifer.

The court disagrees with Dr. Harper's conclusion that, because Griffin thought he was justified in defending himself against Lucifer, he did not understand the quality of his actions. Because Griffin understood he was hurting real people, his mistaken belief that his actions were necessary to defend himself show only that Griffin did not understand that his actions were wrong, not that he did not appreciate the nature and quality of his actions. In *People v. Skinner*, 39 Cal.3d 765 (1985), the California Supreme Court found that the defendant "knew the nature and quality of his act. He knew that his act was homicidal." *Skinner*, 39 Cal.3d at 770. The court explained:

The expert testimony in this case supported the findings of the trial court that this

> defendant was aware of the **nature and quality** of his homicidal act. He knew that he was committing an act of strangulation that would, and was intended to, kill a human being. He was not able to comprehend that the act was wrong because his mental illness caused him to believe that the act was not only morally justified but was expected of him. He believed that the homicide was "right."

*Skinner*, 39 Cal.3d at 778 (emphasis added); *see also Jacobs,* 36 Cal. App.4th at 1270 (Insured who understood he was shooting a gun, which would hurt a person, understood nature and consequences of his actions.) Similarly, Griffin knew the nature and quality of his actions; he knew that he was stabbing a knife into a person and that the knife would hurt the person. He was unable, however, to understand that his actions were not justified by his fear of Lucifer. The question of Griffin's motive, his fear of Lucifer or feeling of being commanded by god, is not relevant to his intent to act, only to wrongfulness of his actions. *See J.C. Penney Casualty Ins. Co. v. M.K.*, 52 Cal.3d 1009, 1026 (1991) (In context of Section 533, Motive not relevant to intent, only to issue of wrongfulness).

Moreland argues that this court cannot second-guess the experts' conclusions that Griffin did not understand the nature and quality of his actions. However, this court is not bound by the criminal insanity standard. The question currently before the court is when a finding of insanity will cause an event to be an "accident" or occurrence, not the legal standard for criminal insanity. Thus, the criminal standard for insanity is "not necessarily controlling." *Jacobs v. Fire Ins. Exchange*, 36 Cal. App.4th 1258, 1282 (1995) (finding criminal standard instructive, but not controlling of whether irresistible impulse, negates willfulness under section 533.) Accordingly, the court is also not bound by the experts' potentially erroneous understanding of the criminal standard.[2]

### 3. Griffin's Attack Is Not An Occurrence

Griffin acted intentionally because he knew was sticking a knife in the head of a person

---

[2] Dr. Harper was certainly confused as to the criminal standard for insanity as he testified that he thought both prongs of the M'Naughten test had to be met before a defendant could be found insane. (Harper Dep. Tr., Fleishman Decl. Exh. I,19:1-13). Indeed, it is possible that this mistake as to the legal standard might have influenced his finding that Griffin did not understand the nature of his actions. Moreover, Dr. Harper also stated that Griffin's failure to understand the aggressive nature applied to both quality and wrongfulness under M'Naughten. (Harper Depo. Tr. at 48:5-18, Knutson Decl. Exh B.) This raises the possibility that Dr. Harper conflated the two prongs of the insanity standard.

who would likely be injured. Griffin's mistaken belief that his acts were justified does not transform his intentional conduct into an accident because he understood the physical consequences of his actions.

Moreland argues that *National Mutual Fire Ins. Co. v. May*, 860 F.2d 219 (6th Cir. 1988), is similar to this case. Moreland argues that May, despite understanding that throwing a lit match on gasoline would start a fire, was found not to understand the physical nature of the consequences of his acts. Thus, Moreland argues that Griffin is like May, he understood he was picking up a knife but did not understand the consequences of his acts. *May* is not persuasive for two reasons. First, the same expert who testified that May "probably knew" that throwing a match in gasoline would start a fire, testified inconsistently that May did understand the physical consequences of his actions. The court found that the expert's inconsistent testimony, along with another opinion that May did not understand the consequences of his actions, sufficient to support the jury's verdict that May did not understand. Thus, the case does not stand for the proposition that a person who understands that a match will start a fire does not understand the consequences of his actions. Second, the evidence here is specific that Griffin understood that he would injure a person by striking that person with what he knew was a knife and there is no evidence to the contrary.

Because Griffin understood that he was sticking a knife in the head of a human being and he understood that his actions would cause harm, the court finds that the attack on Moreland was not an accident and not an occurrence. To the extent that "nature and quality" are defined under California Criminal law to cover the situation where, as here, a defendant understands the concrete nature of his actions and their immediate physical consequences, the Court finds that such a definition should not be applied to civil insurance coverage disputes. California law holds that an occurrence requires an accident and excludes conduct that is intentional, even if the intent to harm is absent. When an insured stabs a person thinking it is a pumpkin, it is an accident because there is no intent to stab a person. However, when an insured stabs a person under the belief that the stabbing is justified, the stabbing is not an accident. When the belief in justification is mistaken, it is a tragedy, but not an accident.

### C. California Insurance Code Section 533

#### 1. Interpretation of Section 533

California Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533. In order to further the public policy of discouraging willful torts, Section 533 is deemed included in every contract of insurance; it is an implied exclusionary clause in the policy. *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d at 1019-21. Thus, as any exclusion, the burden is on Allstate to bring itself within the exclusion of liability under California Insurance Code 533. *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 879 (1979). However, Section 533 is subject to the rules of statutory construction, not the rule requiring strict interpretation of contracts against the insurer. *Jacobs v. Fire Ins. Exch.*, 36 Cal. App. 4th 1258, 1269 (1995).

For one to commit an intentional act under section 533, he or she must have 1) an intent to act and 2) either an intent to harm or an expectation that harm will result. *Venture v. LMI Ins. Co.,* 66 Cal.App.4th 478, 501-502 (1998); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 742 (1993) (Reckless conduct, where the actor should but does not appreciate the likely harm, is not sufficient.). When the insured's mental capacity is at issue, the first prong, the intent to commit the wrongful act, can be shown by a preconceived design to inflict injury. *Reagen's Vacuum Truck Service, Inc. v. Beaver Ins. Co.*, 31 Cal.App.4th 375, 388 (1994). Similarly, the first prong can be disproven by proof that a motive, such as self-defense, justifies the actions taken. *J.C. Penney Casualty Insurance Company v. M.K* 52 Cal. 3d at 1023.[3] Additionally, the second prong, intent to harm or knowledge of probability of harm, need not be proven in certain situations where harm is inherent in the act. *J.C. Penney,* 52 Cal. 3d at 1025

//

---

[3] In *Clemmer*, the court appeared to require a preconceived intent to injure in order to find a willful act. Later cases have clarified that an intent to injure is not a requirement for willfulness, but rather a way to prove intent when there is a question as to whether the insured had the mental capacity to intend to act. *J. C. Penney Casualty Ins. Co. v. M. K.* 52 Cal.3d 1009, 1023-1025 (1991).

(sexual molestation of child inherently harmful).[4]  Finally, willfulness cannot be disproved by arguing that the action is the result of an irresistible impulse. *Jacobs*, 36 Cal. App.4th at 1287 (adopting criminal law's rejection of irresistible impulse based on lack of reliability).

### 2. Collateral Estoppel Does Not Apply

Allstate argues that the criminal conviction for assault with a deadly weapon, standing alone, is sufficient to determine that Griffin's actions were wilful because the issue was necessarily decided in the criminal action. Thus, Allstate argues that Moreland is collaterally estopped from asserting that the acts were not willful.

> [A] party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

*Clemmer*, 22 Cal.3d at 874.  In this case, collateral estoppel does not apply for two reasons. First, the identical issue of intent was not necessarily decided in the criminal proceeding because assault with a deadly weapon is a general intent crime and does not require an intent to injure or any finding of understanding the likelihood of injury. *Allstate v. Overton*, 160 Cal.App.3d 843, 849-50 (1984); *People v. Rocha*, 3 Cal.3 893, 899 (1971). Allstate cites *Rocha* for the proposition that assault with a deadly weapon requires an intent to injure someone. *Rocha* clearly states the opposite:

> We conclude that the criminal intent which is required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. . . .The intent to cause any particular injury to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary.

R*ocha*, 3 Cal.3d at 898-99 (citations and footnotes omitted.)  Thus, the second prong of section 533,  intent to harm or expectation of harm, is not proven by the conviction for assault.

Second, although Moreland's right to proceeds of the insurance contract is dependent on Griffin's rights, Moreland and Griffin are not in privity in this situation. Griffin did not

---

[4]The *J.C. Penney* court was careful to limit its holding to child molestation. However, other courts have found a variety of other acts inherently harmful. *See Venture v. LMI Ins. Co.,* 66 Cal.App.4th 478, 502 (1998) (collecting cases finding various acts inherently harmful).

adequately represent Moreland's interests at the criminal trial. The record reflects that Griffin did not actively contest the finding at the trial that he was guilty of assault. Thus, collateral estoppel does not prevent Moreland from arguing that Griffin's actions were not wilful. *Clemmer*, 22 Cal.3d at 874-877.

### 3. The Attack Was Not Inherently Harmful Because of Griffin's Insanity

Allstate also argues that it does not have to prove that Griffin had the specific intent to cause injuries because an attack is inherently harmful. *Fire Insurance Exchange v. Altieri*, 235 Cal. App. 3d 1352 (1991). As this court has already held, *Altieri* is inapposite because there was no issue of insanity in that case. As the *Jacobs* court noted, "evidence of intent to perform an inherently harmful and inherently wrongful act without justification suffices to trigger section 533, *unless insanity is in issue*." *Jacobs*, 36 Cal.App.4th at 1278 (emphasis added.)

### 4. Griffin's Acts Were Willful Under Section 533

Allstate argues that Griffin intended the acts that led to Moreland's injuries. Moreland argues that Griffin's delusions prevented him from understanding what he was doing. However, as discussed above, Griffin knew he had picked up a knife, that he was striking a person (Moreland) with that knife. Moreover, Griffin expected that the knife strike was likely to harm the person struck. Accordingly, Griffin intended the conduct that harmed Moreland and expected an injury to result. Therefore, Griffin's conduct was willful within the meaning of section 533 and there can be no coverage for the attack.

### D.   The "Intentional/Criminal Act" Exclusion

Allstate argues that coverage is precluded by the Intentional/Criminal Act exclusion of the Policies. The relevant Allstate Policies state:

> We do not cover any bodily injury or property damage intended by, or which may *reasonably be expected* to result from the *intentional or criminal acts* or omissions of any insured person. This exclusion applies even if (a) such an insured person lacks the mental capacity to govern his or her conduct . . . . This exclusion applies regardless of whether or not such insured person is actually charged with or convicted of a crime.

(JSF 9, 12) (Emphasis added).

//

### 1. Lack of Capacity to Control Conduct Is Not Sufficient

Allstate first argues that the exclusion's statement that it applies even if the insured person lacks the mental capacity to govern his or her conduct is determinative. This argument is not persuasive because the exclusion only applies to intentional acts. Thus, the first question is whether the act was intentional. That the exclusion applies even if the insured could not govern his or her conduct does not answer the initial question of whether the act was intentional. In order to exclude the acts of a person under an irresistible impulse, the insurance company must first show that the person understood the nature and quality of his acts. Once the initial showing is made, the insured cannot avoid the exclusion by arguing an irresistible impulse.

### 2. Griffin's Attack Is Excluded As An Intentional Act

Moreland argues that the relevant intent is the subjective intent of the insured and that Griffin did not intend to injure Moreland. Thus, Moreland argues that the intentional acts exclusion does not apply. While the subjective intent of the insured governs the determination of whether an event constitutes a covered occurrence, it does not follow that the same intent governs all intentional acts exclusionary clauses, regardless of the wording of the clause. By its language, this clause refers to an objective standard by referencing damage that could "reasonably be expected." *See Scott v. Allstate Indem. Co.*, 417 F. Supp.2d 929 (N.D. Ohio 2006) ("The phrase 'which may reasonably be expected to result' denotes an objective as opposed to subjective standard of coverage rendering an insured's subjective intent to cause damage irrelevant."). Moreover, assuming, *arguendo*, that subjective intent governed, the attack would still be excluded because Griffin knowingly struck Moreland and subjectively expected that when he struck Moreland with a knife that it would injure her. Thus, under either a subjective or objective test, Griffin performed an intentional act.

### 3. Griffin's Attack Was Not a Criminal Act

In the prior order, the court held that Griffin did not commit a criminal act because he was found "not guilty by reason of insanity." *People v. Drew*, 22 Cal.3d 333, 344 (1978) (California courts treat a judgment after a finding of insanity as an acquittal.); *Ebberts v. State Bd. of Control of Cal.*, 84 Cal. App. 3d 329, 334 (1978) (A crime is not committed when

plaintiff was found not guilty by reason of insanity.); *see also People v. Phillips* 83 Cal. App. 4th 170, 173 (2000) ("California law exempts from criminal responsibility . . . the insane.").

Allstate urges the court to reconsider, arguing that the court erroneously relied upon pre-1982 cases to find that insanity negates the crime. Allstate asserts that in 1982 California changed the penal code and removed insane people from the list in Section 26 of people who are incapable of committing crimes. Allstate then notes that Penal Code Section 28 was amended at the same time to state:

> Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.

Cal. Penal Code § 28(a). Allstate argues that these two amendments show that, since 1982, the insane can form criminal intent and can be held criminally liable.

Allstate misreads the criminal code. First, Section 28(a) does not abolish insanity as a defense, it eliminated the diminished capacity defense and requires a defendant to show the actual lack of intent as opposed to the general lack of capacity to form the required intent. Section 28(a) continues:

> Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.

*Id.* At the same time that the insane were removed from the list of people who cannot commit a crime, section 15 was amended to provide:

> (a) The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate *capacity to form* the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged.
>
> (b) In any criminal proceeding, including any juvenile court proceeding, in which a plea of *not guilty by reason of insanity* is entered, this defense shall be found by the trier of fact only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense.

Cal. Penal Code § 25(a)(b) (emphasis added.). Thus, the criminal code now provides that people with mental incapacities can be found to have committed a crime, but defendants who prove they lacked the ability to understand the nature and quality of their acts or to understand that their actions were wrong, have not committed a crime.

Moreover, penal code section 15 defines a crime as: "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, the punishment of death, or imprisonment, or fine, or removal from office, or disqualification to hold an office of honor or trust or profit in this State." Cal. Penal Code § 15. In this case, Griffin was not punished in any of the enumerated means - he was conserved under California Welfare and Institutions Code § 5000 as a gravely disabled person due to mental illness. Because he was not punished in one of the ways that defines a crime, no crime was committed. Accordingly, the legislature did not intend to hold the insane guilty of a crime and a crime has not been committed when the person is found not guilty by reason of insanity.

**IV.   CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

   1.   Plaintiff's Motion for Summary Judgment is Denied; and
   2.   Defendant's Motion for Summary Judgment is Granted

IT IS SO ORDERED.

Dated: November 13, 2006

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge